[645 NYS2d 564]

In the Matter of NORMA W. GOFF, as Administratrix of the Estate of FRANCES GOFF, Deceased, Appellant, v NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES et al., Respondents.

Third Department, July 11, 1996

## APPEARANCES OF COUNSEL

*Norma E. Hogan,* Albany, for appellant.

*Dennis C. Vacco, Attorney-General,* Albany *(Victor Paladino* and *Peter G. Crary* of counsel), for respondents.

## OPINION OF THE COURT

PETERS, J.

Frances Goff (hereinafter Goff)[1] commenced residence in a nursing facility in July 1992. Between March 1992 and June 1993, Goff made separate transfers of nonexempt funds *(see,* Social Services Law § 366 [2]) totaling in excess of $138,000, without receiving fair market value, to persons not eligible to receive such transfer of funds pursuant to Social Services Law § 366 (5) (c) (3) (i) through (iv). In November 1993, Goff applied to the Essex County Department of Social Services for Medicaid assistance. This application was denied in December 1993 due to excess resources which existed as a result of her transfers of nonexempt funds; Goff was notified that she would not qualify for Medicaid assistance until March 1, 1995. Pursuant to Goff's request for a fair hearing, respondent State Department of Social Services reviewed the denial of Goff's application and sustained the determination of ineligibility. Petitioner's subsequent CPLR article 78 proceeding was dismissed by Supreme Court. Petitioner appeals.

The sole issue presented is whether the State employed the proper methodology to calculate a period of ineligibility for an individual who has made a prohibited transfer of assets at the time of application.[2] Pursuant to the Federal Medicaid guidelines imposed upon a State which seeks to participate in the Medicaid program *(see,* 42 USC § 1396a), an applicant who

---

1. Frances Goff was the original petitioner in this proceeding. After perfection of the appeal, Goff died and this Court allowed Norma Goff, administratrix of Goff's estate, to substitute as petitioner.

2. A prohibited transfer of assets for Medicaid purposes is one in which an individual becomes artificially destitute solely to attempt to qualify for Medicaid *(see,* 18 NYCRR 360-4.4 [c] [1] [i]).

makes a prohibited transfer of assets must be deemed ineligible for Medicaid assistance for a specified period (see, 42 USC § 1396p [c]). By Federal statute, the States were guided to calculate such period as follows:

"begin with the month in which such resources were transferred and the number of months in such period shall be equal to the lesser of—

"(A) 30 months, or

"(B) (i) the total uncompensated value of the resources so transferred, divided by (ii) the average cost, to a private patient at the time of the application, of nursing facility services in the State or, at State option, in the community in which the individual is institutionalized" (42 USC § 1396p [c] [1]).

Pursuant thereto, New York calculated concurrent periods of ineligibility for multiple prohibited transfers of assets, with each commencing from the date of each nonexempt transfer.

On or about October 9, 1990, the United States Department of Health and Human Services (hereinafter DHHS) issued Medicaid State Operations Letter No. 90-87 for the distinct purpose of "clarify[ing] * * * the method to be used in determining the period of ineligibility for persons who transfer resources without receiving fair market value more than once during a 30-month period". Therein it reviewed whether each transfer must be treated separately, with periods of ineligibility to run concurrently, or whether multiple transfers during such 30-month period should be treated as one transfer.

In so reviewing the different methodologies which could be employed within the confines of the transfer statute, DHHS noted that while the "concurrent approach is a reasonable one, there is potential for 'gaming' * * * [since such] policy could result in a substantially shorter period of restricted coverage for an individual who has divided a large amount of resources into many separate transfers, since the periods of restricted coverage would all run concurrently". DHHS thus suggested that until regulations are published specifically addressing this issue, New York may want to consider the following: "regard any transfer that an individual could have made in one step, but instead chose to make in two or more steps during a period when the individual would be subject to restricted coverage, as being in fact a single transfer * * * [so long as] an individual had the full amount of resources available at the time of the first transfer and could have made the transfer all at once, but chose not to."

Hence, while New York had applied the concurrent approach to multiple prohibited transfers of assets, in direct response to this official publication from DHHS it amended its regulations in September 1992 to include 18 NYCRR 360-4.4 (c) (2) (iii) *(c)*, which now mandated the use of the consecutive methodology when calculating Medicaid ineligibility periods. The effect of this change, as relevant herein, is that the amounts of all transfers made within the 30 months prior to an application for Medicaid assistance were now added together for the imposition of one penalty period which began to run from the date of the first transfer, rather than from the month in which each asset was actually transferred.

Petitioner contends that when 18 NYCRR 360-4.4 (c) (2) (iii) *(c)* was originally promulgated, it was not in accordance with Federal Medicaid law, despite its conformity with DHHS' suggested methodology and, thus, is violative of 42 USC § 1396p (c) (4), which mandates that all periods of ineligibility be calculated in accordance with Federal Medicaid law. This precise challenge was squarely addressed in *Steiner v Dowling* (914 F Supp 25, *affd* 76 F3d 498). There, it was concluded that the consecutive approach to the calculation of periods of Medicaid ineligibility, implemented in accordance with suggestions made through a DHHS Medicaid State Operations Letter and the regulations promulgated in response thereto *(see,* 18 NYCRR 360-4.4 [c] [2] [iii] *[c]),* was not contrary to Federal Medicaid law as that law existed prior to 1993 *(Steiner v Dowling, supra,* at 29).[3]

Adopting the reasoning applied by the District Court for the Northern District of New York in *Steiner v Dowling (supra)* in its review of the applicable legislative history of 42 USC § 1396p (c) (1) prior to its amendment in 1993, we agree that such statute did not specify whether periods of ineligibility must be calculated concurrently or consecutively, only that the period should commence in the month in which the resources were transferred *(Steiner v Dowling, supra,* at 28). That court concluded, and we agree, that based thereon the consecutive methodology suggested by DHHS in its Operations Letter, thus

3. It should be noted that 42 USC § 1396p (c) (1) was amended in 1993 to mandate the use of a consecutive, rather than concurrent, methodology *(see,* Omnibus Budget Reconciliation Act of 1993 § 13611 [a], Pub L 103-66, 107 US Stat 312, 622). Such amended statute specified that those States implementing the concurrent approach could not apply the consecutive approach for the first time to assets transferred prior to the enactment of the amended Federal statute.

triggering the promulgation of 18 NYCRR 360.4-4 (c) (2) (iii) *(c)*, cannot be found to be contrary to the Federal Medicaid law as it existed at that time *(see, Steiner v Dowling, supra*, at 29).

DHHS' interpretation of the preamendment 42 USC § 1396p (c) (1) amounted to the construction by an administrative agency of a statutory scheme that it is entrusted to administer *(Steiner v Dowling, supra*, at 29; *see, Chevron U.S.A. v Natural Resources Defense Council*, 467 US 837, 844). This, coupled with Congress' intent to keep the Medicaid program free of abuse and fraud, as evidenced by its subsequent adoption of legislation employing the consecutive methodology suggested by DHHS, fully supports Supreme Court's determination that administrative reliance on such interpretation of the controlling Federal statute was entirely proper " '[i]n a statutory area as complicated as this one' " *(Steiner v Dowling, supra*, at 29).

MERCURE, J. P., CREW III, CASEY and SPAIN, JJ., concur.

Ordered that the judgment is affirmed, without costs.